IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EUGENE HORTON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02-cv-282-MJR |
| ) | |
| DONALD SNYDER, et al., ) | |
| ) | |
|     Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(a) for a Report and Recommendation on a Motion for Summary Judgment filed by the Defendants, Donald Snyder, Shelton Frey, and James Goodman, on December 14, 2005 (Doc. 82). For the reasons set forth below, it is **RECOMMENDED** that the Defendant's Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part, and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The plaintiff, Eugene Horton, is currently an inmate at the Menard Correctional Center ("Menard"). His complaint alleges violations of his constitutional rights and is brought pursuant to 42 U.S.C. § 1983. Specifically, he alleges that the defendants denied him access to the courts by having an insufficient law library and library staff while he was seeking post conviction relief. In 2001, at the time of the alleged violation and when Horton filed his complaint, he was incarcerated at Tamms Correctional Center ("Tamms"). Approximately four years after Horton filed his original complaint in this case, he was transferred to Pontiac Correctional Center

1

("Pontiac") and was then later transferred to his current location at Menard. (Horton's Deposition, p. 13).

Horton is in prison based on a 1971 murder conviction and a conviction in 1983 for armed robbery which he committed while on parole. Because Horton received his robbery conviction while on parole, his current incarceration is still based upon the 1971 murder conviction. (Horton Dep. p. 22).

Horton alleges the following facts in this case: On August 3, 2000, Horton received an affidavit from an attorney. This affidavit indicated that one of the attorney's clients, Felton Peck Jr., had confessed to the same murder for which Horton has been convicted. With this affidavit in hand, Horton sought information about what he needed to do to challenge his conviction from the Tamms H-Pod Satellite Law Library. He alleges that he was completely dependent on this library and its material. (Doc. 1, p. 5). When Horton tried to find the information that he needed, he instead found a number of the law books and materials missing. (Doc. 1, p. 5).

On August 8, 2001, he informed defendant James Goodman, the law clerk at the library, about the missing items. One week later, Horton requested information from Goodman. On August 26, 2001, Goodman "refused to initiate the procedure for obtaining the requested and needed material." (Doc. 1, p. 6). Horton alleges that Goodman also failed to provide the material that Horton requested. On that same day, Horton filed a grievance regarding this matter. Various prison officials responded to Horton's grievance on October 26, 2001, February 4, 2002, and March 6, 2002. Each response refused to take any corrective measure. (Doc. 1, p. 6).

Horton file his Petition for Relief from Judgment in the Circuit Court of Cook County. He now alleges that the defendant's actions prevented him for researching his legal issues which

resulted in the September 4, 2001 denial of his Petition. (Doc. 1, p.6).

This case has so far proceeded as follows: Horton's original complaint was against Director Snyder, Warden Welborn and Goodman, the law clerk in the prison library. Judge Reagan, in an order dated March 24, 2005, dismissed the claims against Snyder and Welborn in their individual capacity, but allowed the case to proceed against them in their official capacity. (Doc. 47). In that same order, Judge Reagan granted leave to Horton to substitute the new Tamms warden, Warden Frey, for Warden Welbron, and allowed this claim to proceed against Warden Frey in his official capacity only.

On August 10, 2005, this Court issued a Report and Recommendation which relied on Heck v. Humphrey, 512 U.S. 477 (1994), and recommended that the Court dismiss Horton's claim for damages.(Doc. 75). This Report was adopted by Judge Reagan on September 23, 2005, (Doc. 77).[1] Both parties agree that the only remaining claims in this case are a claim against Goodman for declaratory relief and a claim for injunctive relief against Warden Frey and Director Snyder in their official capacities. (Doc. 82, p.1 & Doc. 86 p. 1).

## CONCLUSIONS OF LAW

Defendants have now brought a Motion for Summary Judgment which contains three grounds for summary judgment: 1) Injunctive relief would be improper because there is no continuing violation of federal law; 2) No reasonable jury could find that the defendants have not satisfied their obligation to provide Horton access to the Courts; and 3) Horton has failed to exhaust his administrative remedies.

---

[1] That adoption was later modified so that Horton's claims were only dismissed without prejudice. (Doc. 89)

3

Summary judgment is proper if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To reach a verdict in favor of summary judgment this court must draw all reasonable inferences in favor of the non-moving party. Tesch v. County of Green Lake, 157 F.3d 465, 471 (7th Cir. 1998). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment is warranted if "on the record as a whole, a rational tier of fact could not find for the non-moving party." Rogers v. City of Chicago, 320 F.3d 748, 752 (7th Cir. 2003).

## I. INJUNCTIVE RELIEF CANNOT BE IMPOSED ON DEFENDANTS FREY AND SNYDER.

Defendants Frey and Snyder are currently being sued in their official capacities as officials of the state of Illinois. Under federal law when an individual is being sued in his official capacity as a representative of his state, he receives the same protection from suit as a state would receive under the Eleventh Amendment. B.H. Papasan v. A. Allain, 478 U.S. 265, 280 (1986); *citing* Ex parte Young, 209 U.S. 123 (1908). Under the Eleventh Amendment injunctive relief is only proper in a suit brought against a state if the plaintiff can show that there is a continuing violation of federal law. Green v. Mansour, 474 U.S. 64, 68 (1985). As a result, Horton's claim for injunctive relief should only be allowed to proceed if Horton could show that he is the victim of a continuing violation of federal law.

In the case at bar, Horton has brought this suit claiming that specific violations by Goodman prevented him from successfully filing a single petition with the Circuit Court of Cook

4

County. He alleges that his rights were violated by these defendants during a specific period when he was filing that petition and does not allege that these defendants are part of an ongoing violation.[2] As a result, Horton can only demonstrate a past violation and is barred under the Eleventh Amendment from bringing his claim for injunctive relief against defendants Frey and Snyder.

### II. GOODMAN IS NOT ENTITLED TO THE SAME ELEVENTH AMENDMENT PROTECTION.

The defendants also seek to wrap Goodman in the same Eleventh Amendment protective blanket. They argue that declaratory relief is barred on the same grounds that prevent injunctive relief against Frey and Snyder. This argument ignores the discrepancy between state actors sued in their official capacity and those who are sued in their individual capacity. When a state official is sued and held liable in his individual capacity he does not receive the protection that a state would receive under the Eleventh Amendment, even if he holds a state position. B.H. Papasan v. A. Allain, 478 U.S. 265, 280 n. 11 (1986); *citing* Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974).

In the case at bar, Goodman is being sued in his individual capacity. Based upon Horton's allegations, Goodman was not acting in his official capacity when he allegedly violated Horton's constitutional rights. As Judge Reagan noted in his earlier order, for the claims against the defendants individually to go forward, Horton must allege that the defendants were personally involved in the constitutional deprivation. (Doc. 47, p. 6 *citing* Zimmerman v.

---

[2] In his arguments before to the Court, Horton does complain that he has still unable to successfully file a habeas petition, but he does not allege that the defendants in this case are personally involved in his current problems.

Tribble, 226 F.3d 568, 574 (7th Cir. 2000)). Horton alleges that Goodman personally "refused to initiate the procedures for obtaining the requested and needed material." (Doc. 1, p. 6). This personal involvement in a constitutional violation that is not ordered by the state subjects Goodman to a suit in his individual capacity.  Furthermore, the defendants do not argue that Goodman was acting only in his official capacity. As a result, he is not entitled to protection under the Eleventh Amendment and the lack of a continuing violation does not bar a claim against him for declaratory relief.

### III. HORTON'S LEGAL ASSISTANCE AT MENARD IS IRRELEVANT.

Horton claims that Goodman's actions violated his constitutional right of "meaningful" access to the courts. The right of access allows prisoners to raise their voices in the courts; otherwise they would be at the whim of prison officials. Demallory v. Cullen, 855 F.2d 442, 446 (7th Cir. 1988). To satisfy the right to meaningful access, prisoners must receive "that quantum of access to prison libraries-not total or unlimited access-which will enable them to research the law and determine what facts may be necessary to state a cause of action." Hossman v. Spradlin, 812 F.2d 1019, 1021 (7th Cir. 1987); *see* Campbell v. Miller, 787 F.2d 217, 226 (7th Cir. 1986). Prisoners must be given access to trained legal personnel or adequate access to law libraries. Bounds v. Smith, 430 U.S. 817, 828 (1977). The defendants now argue that Horton has access to both a paralegal and legal research materials at Menard where he is currently incarcerated and, as a result, the defendants should be granted summary judgment. (Doc. 83, p. 7).

This argument concerning Menard is irrelevant to Horton's claim against Goodman. Horton filed his complaint in this case in 2001 for actions that occurred in 2001. At that time, he was incarcerated at Tamms and the defendants who allegedly violated his rights were at Tamms.

This case proceeded until 2005 when he was transferred from Tamms to Pontiac. (Horton Dep. p. 13). He was housed at Pontiac for six months and was then transferred to Menard. Id. Nowhere in his complaint does he allege that his rights were violated by these defendants at Menard. The fact that he may now have adequate access is irrelevant in a claim seeking a declaration that he was formerly denied access.

### IV. HORTON HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

The defendants argue that Horton has failed to exhaust his administrative remedies at Pontiac and Menard. (Doc. 83, p. 8). Under 42 U.S.C. § 1997e(a) ("§ 1997e(a)"), a prisoner must exhaust his administrative remedies before an action can be brought under § 1983.

In the case at bar, Horton filed a grievance based upon his allegations in August of 2001. (Doc. 1, ex 1). This grievance was denied in January of 2002 and was appealed to the Administrative Review Board which denied his appeal in February, 2002. Accordingly, the defendants do not argue that Horton failed to exhaust his administrative remedies at Tamms.

As already noted, in 2005, long after Horton had filed this claim, he was transferred to Pontiac and later to Menard. The defendants now argue that Horton should have re-filed his grievance at Pontiac and then at Menard in 2005 for actions taken by the defendants in 2001 at Tamms. Under such a system, a prisoner's claim could proceed on its merits until the prisoner was transferred - at which point the prisoner would be expected to re-file his grievances and exhaust his administrative remedies before he could continue his lawsuit.

This Court is not inclined to support such an absurd regime. There is no indication that Illinois law would allow him to file another grievance over the same actions previously taken. *See, e.g.,* Strong v. David, 297 F.3d 646 (7th Cir. 2002). Typically, a grievances must be filed

within sixty days of the incident giving rise to the complaint. Ill. Adm. Code, tit 20 § 504.810(a)(2003). Here nearly five years have passed so there is no reason to think that Horton would be allowed to re-file a grievance based upon the actions taken by the defendants at Tamms just because he was transferred to Pontiac and Menard. To expect a prisoner to re-file all of their grievances as soon as they are transferred would create an unnecessary overflow of grievances for prison administrators. As a result, Horton's claims are not barred by any failure to exhaust his administrative remedies at Menard and Pontiac.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment filed by the defendant on December 14, 2005 be **GRANTED** in favor of defendants Snyder and Frey and **DENIED** against defendant Goodman. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 10, 2006**

                                                    *s/ Donald G. Wilkerson*
                                                    **DONALD G. WILKERSON**
                                                    **United States Magistrate Judge**